UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHON B. MCKINNEY, )<br>4832 Reservoir Road, N.W. )<br>Washington, D.C. 20007 )<br>)<br>)<br>Plaintiff, )<br>v. )<br>) Civil Action No.:<br>JOHN DOE OFFICERS 1-4, in their ) Jury Trial Demanded<br>Individual capacities )<br>United States Park Police )<br>1100 Ohio Drive SW )<br>Washington, D.C. 20024 )<br>)<br>Defendants. ) | |

## CIVIL COMPLAINT

### INTRODUCTION

This case involves the false arrest and imprisonment of a 31-year-old African-American male innocently walking in the park in the Palisades neighborhood of Washington, D.C. Plaintiff at the time had just completed walking "Senator" the pug on his daily dog walking routine in his dog walking business. Plaintiff was confronted by an unidentified plain clothes man in the park (a yet known police detective), immediately and inexplicably accosted by United States ("U.S.") Park Police as he departed from the park in route to his home, grabbed, runs a short distance, subsequently tased three times with metallic-like tasers (the first in his back), handcuffed, arrested, seen by EMS, hospitalized for emergency medical care, jailed for twenty-four (24) hours, falsely accused of assaulting three (3) police officers and resisting arrest, and subsequently released after the charges were no papered. At no time was he involved in any criminal activity, reasonably suspected of being involved in any criminal activity, or posed a threat of even minimum harm to the officers. The immediate case assert Bivens based violations of Plaintiff's rights under the Fourth and Fifth amendments to the United States Constitution.

1

**JURISDICTION AND VENUE**

1. Section 28 U.S.C. §1331 is invoked as the immediate action presents federal questions and seeks to redress the deprivation of rights under the Fourth and Fifth Amendments to the United States Constitution. Venue exists here because all actions herein occurred in the District of Columbia.

**PARTIES**

2. Plaintiff Jonathan McKinney is a 31-year-old African-American resident of the Palisades community in the District of Columbia (hereafter "D.C."). He is a professional dog walker, and dog walking business owner.

3. Defendants John Does 1-4, include a plain clothes individual police officer referenced as Lieutenant Hayes and multiple uniformed U.S. Park Police Officers respectively referenced as "Lieutenant Hayes"; Officers Wilson; Sullivan; and Trapani.

**FACTS COMMON TO ALL CLAIMS**

4. Jonathon McKinney (hereafter "McKinney") has been a Washington D.C. resident living in the Palisades neighborhood for several years. He has operated a full-service dog walking service for five (5) years there. His daily schedule and walking route is located within a three-mile radius, which includes Reservoir Rd, MacArthur Rd and Rock Creek Park. His normal walking routine is through Rock Creek Park several times a day.

5. On Friday, July 8, 2022 at approximately 9:30am, McKinney, had just completed walking "Senator the Pug" for one of his clients and was returning home on his regular route through Rock Creek Park. Upon his walk, he noticed a stranger, whom he described as a white male, approximately 6' 3", 220-240 pounds, wearing a shirt and shorts staring at him with a grimacing face. There were no other persons in the area.

6. During his walk McKinney was consumed with a commonly known Pokémon game that he played on his cell phone. He had no weapons or drugs in his possession. Nor was he engaged in

2

any criminally suspicious activity.  He was simply walking on a regularly travelled route minding his business, returning to his nearby home.

7. As he proceeded to walk past the stranger in the opposite direction, the stranger said: "How you doing?"  McKinney apprehensively responded: "Don't talk to me," quickly walking by the man and continuing on his path.  As he continued his walk, McKinney checked behind him and saw this same strange white male who previously walked past him lingering nearby.

8. As McKinney began to exit the park, the stranger was in his direct path, standing about twenty (20) feet away staring at him. McKinney now wondered "Why is he still here?"  The stranger then commented: "I can talk to you; this is a public park. All I asked was how are you?"  Given that no one was present and the stranger was increasingly invasive, McKinney felt threatened. Using a more forceful tone, he again said "Don't talk to me!" and was able to walk past the stranger and exit the park.

9. Just as McKinney exited the park, only seconds later, a police car with neither sirens nor flashing lights, pulled up directly in front of him. An Officer Wilson, seated in the front passenger seat of the vehicle, jumped out and ran directly toward McKinney. Without saying anything, he aggressively grabbed his arm. Startled and confused, given the immediate prior interaction with the stranger and now heightened concern, McKinney pulled his hand away which caused him to drop and retrieve his cellphone in the street. Totally overwhelmed and frightened, McKinney briefly fled.

10. Officer Wilson, accompanied by three other officers, including the white male stranger, then chased him to an area near a broken fence.  Through this point there was no communication by the police with McKinney about anything, nevertheless why he was being stopped and pursued. Then, without any warnings, resistance on his part, sign of a weapon, or threat of violence, Officer Wilson shot three metallic tasers into McKinney's body.  Only feet away, the fist taser shot was into his back which demonstrates that McKinney was not posing a threat to the officers.

11. Again without any threats or warnings, a second metallic taser was fired into his right leg, and then a third taser into his right leg (inner thigh) near his knee.

3

12. McKinney was then tackled to the ground by Officer Wilson's partner (name unknown). Unable to brace himself, his face and head hit the ground and foliage as two officers believed to be Officer Wilson and "Detective Hayes", the white male stranger in the park, sat directly on top of him and detained him at no time explaining why. At no time did McKinney resist. Given the weight of the officers concentrated on his upper body, he had having difficulty breathing.

13. While on the ground, McKinney recalls being handcuffed by "Detective Hayes", the same strange man that confronted him as he walked innocently in the park. Apparently, "Detective Hayes," dressed in casual plain clothes called the Park Police for reasons yet known. McKinney was walked out of the park forced to sit down curb side, as the officers waited for a fifth police officer to arrive. He was then put into the back seat of that officer's police vehicle, which windows were not cracked, and it difficult for McKinney to breathe. The temperature on Friday, July 8, 2022 was in the 80s and humid.

15. An EMS vehicle arrived on the scene whereupon McKinney's injuries were examined and he was rushed to the nearby Sibley Hospital Emergency Room ("Sibley"). He remained handcuffed and accompanied by US Park Police officer Wilson and Officer Sullivan, a white female officer.

16. A Sibley Hospital Emergency Room doctor removed the (3) three metallic tasers from his lower back (spine), right leg inner thigh, right leg shin and commented: "why would someone use tasers that are hard to get out."

17. After being treated, given Tylenol, and discharged from Sibley. Still not told why he was arrested in the first instance, Officers Wilson and O'Sullivan McKinney transported him to a U.S. Park Police District for finger printing. After being fingerprinted, he was transported to a Capitol Hill police station for booking. He remained in jail overnight without having been involved in any criminal behavior or being told why he was stopped and arrested.

18. On Saturday, July 9th at approximately 10:30am, more than 24 hours after his interaction with the strange white male in the park and being arrested, McKinney was released and given paperwork stating: "No paper/No Charges." The document stated, however, several charges: three assaults

4

on a police officer charge and one, resisting arrest charge. There is no filed police report with the reference number identified on the document in the District of Columbia Criminal Records computer system.

19. McKinney continues to suffer from the three tasers, both physically and emotionally. The incident has caused him considerable embarrassment, mental anxiety, loss of self-esteem, and continued flashbacks of the incident as he has attempted to sustain himself and continue his business, necessarily altering his walk paths and having a heightened concern about repeated interaction with Park Police officers.

20. At all times referenced herein, the subject officer's actions were intentional, reckless, with absolute disregard for McKinney's safety and well-being.

21. McKinney's emotional and physical harm were directly caused by the Defendants individual and joint conduct. Additionally, following his release he tested positive for Covid.

22. Defendants' actions, upon information and belief, violated U.S. Park Police policies and procedures regarding arrests, probable cause, use of force and truthfulness in reporting and documenting incidents and events.

## CLAIMS FOR RELIEF[1]

### COUNT ONE

**Violation of the Fourth Amendment-Excessive Force/Unreasonable Seizure**
**(Defendants John Does Officer 1-4 in individual capacities)**

23. Mr. McKinney incorporates the foregoing paragraphs by reference as if fully set forth herein.

24. Defendant John Doe Officer, believed to be Officer Wilson, in his repeated use of metallic tasers absent any threat of physical harm, nevertheless any reasonable suspicion of a criminal event on McKinney's part, without warning, used unreasonable and excessive force against Mr. McKinney in violation of her rights under the Fourth Amendment.

---

[1] /*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, **403 U.S. 388 (1971)**

25. John Doe Officers also used unreasonable and excessive force against Mr. McKinney in executing an unlawful arrest and physically and unnecessarily detaining him.

26. As a direct and proximate result of Defendants' actions, Mr. McKinney suffered injuries including, but not limited to, pain and suffering, anxiety, mental anguish, and medical costs.

27. Given the common joint engagement of the parties in the illegal arrest and ensuing use of force against Plaintiff, each Defendant is jointly and severally liable to Mr. McKinney for the violation of his Fourth Amendment rights.

28. Likewise, defendant John Doe Officer ("Wilson") acted willfully, maliciously, and with reckless or callous indifference to Mr. McKinney's federally protected rights and is therefore liable for punitive damages.

## COUNT TWO

### Violation of the Fifth Amendment-Deprivation of Substantive Due Process and Equal Protection
### (Defendants John Does Officers 1-4 in their individual capacities)

29. Mr. McKinney incorporates the foregoing paragraphs by reference as if fully set forth herein.

30. There was no justification herein to suspect Mr. McKinney of committing a criminal offense, especially absent any communication with him or explanation as to why he was stopped in the first instance.

31. Defendants' John Doe officers' stop, arrest, and use of manifestly excessive force, three tasers absent a corresponding threat under the use of force continuum against Mr. McKinney was so egregious, so outrageous that it may fairly be said to shock the contemporary conscience.

32. Defendants are jointly and severally liable to Mr. McKinney for the violation of Plaintiff's Fifth Amendment right.

33. Further, defendant John Doe Officers (Hayes and Wilson) acted with reckless or callous indifference to Mr. McKinney's federally protected rights and are therefore liable for punitive damages.

## COUNT THREE

### Violation of Fourth Amendment-False Arrest /False Imprisonment
### (Defendants John Does Officers 1-4 in their individual capacities)

34. Mr. McKinney incorporates the foregoing paragraphs by reference as if fully set forth herein.

35. At no time did McKinney commit an illegal act in Defendants' presence nor act in a manner that an objective police officer would consider reasonably suspicious sufficiently to justify either stopping or physically detaining him.

36. McKinney, while innocently walking home from his dog walking work, was physically detained, for more than 24 hours under tumultuous circumstances, illegally stopped, physically violated, handcuffed, treated for emergency medical care, taken to the Park Police for finger prints, booked, and placed in a cell.

37. Defendants are jointly and severally liable to Mr. McKinney for the violation of his Fourth Amendment rights.

38. Defendant John Doe Officers 1-4 acted with reckless or callous indifference to Mr. McKinney's federally protected rights and are therefore liable for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Mr. McKinney respectfully urges upon this court the following relief:

a. Compensatory damages in an amount in excess of one million dollars:

b. Where appropriate punitive damages;

c. Such other relief as this court deems just and proper; and

d. Costs and attorneys' fees.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

Date: September 29, 2022

                                        Respectfully submitted,

                                        <u>/s/ Donald M. Temple</u>
                                        Donald M. Temple, Esq.
                                        1310 L Street NW, Suite 750
                                        Washington, D.C.  20005
                                        (202) 628-1101 telephone
                                        (202) 628-1149 fax
                                        <u>dtemplelaw@gmail.com</u>
                                        *Attorney for Plaintiff*