UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JONATHON B. MCKINNEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 22-cv-02943 (APM) |
| JOSEPH HAYES, *et. al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

### I.

On July 8, 2022, Plaintiff Jonathon B. McKinney, a Black man and a professional dogwalker, was walking a dog in Rock Creek Park when he was allegedly confronted by four unidentified White individuals who detained him without explanation, chased him briefly, and then tased him three times. Second Am. Compl., ECF No. 26, ¶¶ 2, 4–13 [hereinafter Am. Compl.]. Plaintiff further claims that he was subsequently tackled, handcuffed, arrested, and placed in the back of an uncomfortably hot police car. *Id.* ¶¶ 11–13, 17. After being taken to the hospital for emergency medical care, Plaintiff spent 24 hours in jail for purportedly assaulting the individuals he encountered and resisting arrest, although the charges were ultimately not papered. *Id.* ¶¶ 14–18. Those four individuals were Joseph Hayes, Sheila O'Sullivan, Alec Trapani, and Michael Wilson, all officers of Defendant U.S. Park Police ("Individual Defendants"). *See id.* ¶ 3. Plaintiff now brings *Bivens* claims against these individual officers under the Fourth and Fifth Amendments, as well as various common law tort claims against the officers and Defendant U.S. Park Police, under the Federal Tort Claims Act ("FTCA"). Am. Compl. ¶¶ 22–67.

Defendants partially move to dismiss, arguing that there is no *Bivens* remedy available based upon the factual allegations in the complaint. Defs.' Partial Mot. to Dismiss, ECF No. 33 [hereinafter Defs.' Mot.]; Defs.' Mem. of P&A in Supp. of Defs.' Mot., ECF No. 33-1 [hereinafter Defs.' Mem.], at 5–22. They further argue that Plaintiff fails to state a negligent supervision and retention claim under the FTCA against Defendant U.S. Park Police. Defs.' Mem. at 23–25.

For the reasons that follow, the court (1) denies the motion as to the Fourth Amendment *Bivens* claims (Counts One and Two), (2) grants the motion as to the Fifth Amendment *Bivens* claims (Counts Three and Four), and (3) grants the motion as to the FTCA negligent supervision and retention claim against Defendant U.S. Park Police (Count Nine).

## II.

Federal Rule of Civil Procedure 12(b) sets forth several defenses warranting dismissal of a complaint. Here, Defendants invoke both Rules 12(b)(1) and 12(b)(6) in support of their motion. Defs.' Mem. at 3–5. Rule 12(b)(1) permits a defendant to move to dismiss a case for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(6), defendants can argue that a plaintiff has failed to state "a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

Rule 12(b)(1), however, does not apply here. That is because "the issue is not whether the Court has jurisdiction to entertain the plaintiff's *Bivens* claims, but whether the Court should dismiss the claims because a proper reading of *Bivens* prevents the Court from granting the plaintiff the relief that he is seeking. The proper rule for seeking such a dismissal is, of course, Federal Rule of Civil Procedure 12(b)(6), and not Rule 12(b)(1)." *Morrow v. United States*, 723 F. Supp. 2d 71, 78 (D.D.C. 2010); *accord Kim v. United States*, 632 F.3d 713, 717 (D.C. Cir. 2011) (considering availability of *Bivens* claim under Rule 12(b)(6), not Rule 12(b)(1), where both

2

grounds were asserted in the motion). The court will thus evaluate Defendants' motion under the Rule 12(b)(6) standard.

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint[.]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, the pleadings must suggest a plausible scenario that shows that the pleader is entitled to relief." *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the court "must treat the complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citations omitted). The court need not, however, credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678.

### III.

#### A.    *Bivens* Claims

Plaintiff brings *Bivens* claims under the Fourth and Fifth Amendments against the Individual Defendants, asserting that he was falsely arrested, subjected to excessive force, and discriminated against on the basis of race. *See generally* Am. Compl. A *Bivens* claim is a judicially created cause of action established in the landmark case *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, "[t]he Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017). "In the decade that followed, the Court recognized

what has come to be called an implied cause of action in two cases involving other constitutional violations," authorizing a Fifth Amendment gender discrimination claim and an Eighth Amendment prison healthcare claim. *Id.* at 131 (citing *Davis v. Passman,* 442 U.S. 228 (1979) & *Carlson v. Green*, 446 U.S. 14 (1980)).

"Since these cases, the Court has not implied additional causes of action under the Constitution," and it has made clear that "creating a cause of action is a legislative endeavor" and "the Judiciary's authority to do so at all is, at best, uncertain." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). Nevertheless, the Court has not overruled *Bivens*, instead setting forth a two-step analysis that courts must undertake to evaluate *Bivens* claims. *Id*. at 492. First, courts must determine "whether the claim arises in a new *Bivens* context, *i.e.*, whether the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Abbasi*, 582 U.S. at 147 (internal quotation marks omitted). Factors relevant to whether a controversy arose from a "new context" include: (1) "the rank of the officers involved; [(2)] the constitutional right at issue;  [(3)] the generality or specificity of the official action; [(4)] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; [(5)] the statutory or legal mandate under which the officer was operating; [(6)] the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or [(7)] the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 140. If the case does not arise in a new context, the *Bivens* claim can proceed. *Id.* at 138.

If the case does present a new context, then "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136). Those special factors—which focus on the separation of

4

powers—include national security considerations or the existence of an alternate remedial scheme. *Id.*; *Abbasi*, 582 U.S. at 137; *Hernandez v. Mesa*, 140 S. Ct. 735, 749 (2020).  The presence of any special factor is an independently sufficient bar to a *Bivens* claim.  *Egbert*, 596 U.S. at 493.

1. *Fourth Amendment (Counts One and Two)*

Plaintiff's Fourth Amendment claims challenge his detention and arrest in Rock Creek Park by the Individual Defendants, as well as his subsequent jailing, under theories that the arrest and detention were without probable cause and the force used against him was excessive.  Am. Compl. ¶¶ 22–32.  Defendants argue that this claim is not cognizable under *Bivens* because it presents a new context and implicates special factors counseling against a judicial remedy.  The court disagrees.

This case is nearly identical to *Bivens* and thus does not present a new context.  In *Bivens*, "agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered [the plaintiff's] apartment and arrested him for alleged narcotics violations," "manacled petitioner in front of his wife and children, and threatened to arrest the entire family."  403 U.S. at 389.  After the officers searched his apartment, they took plaintiff "to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search."  *Id.*  The plaintiff subsequently brought false arrest and unreasonable force claims against the officers under the Fourth Amendment.  *Id.*  Here, too, Plaintiff was allegedly arrested without probable cause and subjected to physical force and jailing.  *See supra* Part I.  In both cases, the defendants were rank-and-file law enforcement officers and the claims involved unlawful arrest and excessive force.  *See Abbasi*, 582 U.S. at 138.  And the basic fact pattern is the same: the plaintiffs were both accosted, arrested with force, and detained in a humiliating manner.  This is not a new context.

5

The Fourth Circuit recognized as much in *Hicks v. Ferreyra*, where it considered whether a plaintiff's *Bivens* claims against U.S. Park Police officers were cognizable in light of recent Supreme Court jurisprudence.  64 F.4th 156 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 555 (2024).  In that case, the plaintiff was a Black Secret Service agent who was parked on the side of the road waiting to join a motorcade, when he was stopped by two White U.S. Park Police officers who became agitated upon seeing that he had a gun on his dashboard.  *Id.* at 162–63.  The officers detained the plaintiff at gunpoint and yelled at him, even after verifying that the plaintiff himself was a law enforcement official.  *Id.*  After his release, one of the same officers stopped the plaintiff a second time based on an alleged traffic violation, which the jury ultimately found did not occur.  *Id.* at 163.  The plaintiff argued that under *Bivens*, his Fourth Amendment rights were violated by the prolonged traffic stops, which each constituted a seizure.  *See id.*  At trial, a jury awarded Plaintiff damages.  *Id.* at 164.

On appeal, the defendants asserted that factual differences presented a new context.  *Id.*  "[U]nlike in *Bivens*, Hicks's home was not searched, and the officers did not arrest Hicks or use excessive force against him," and in *Bivens*, no traffic stop was implicated.  *Id.* at 166.  The Fourth Circuit disagreed, applying the *Abbasi* factors to conclude that both claims

> were based on the officers' discrete actions and did not implicate large-scale policy decisions or other general directives or statutes. Instead, the officers' actions here and in *Bivens* were taken in purported execution of principles of criminal law well-informed by decades of judicial guidance regarding the Fourth Amendment prohibition on the warrantless seizure of citizens without reasonable, articulable suspicion or probable cause.

*Id.* at 167 (internal quotation marks and citations omitted).  The Fourth Circuit so reasoned because "while the decision in *Abbasi* effectively may have halted the expansion of a *Bivens* remedy to cases outside the context of the three, existing decisions recognizing such a remedy, *Abbasi*

6

reaffirmed that a *Bivens* remedy remains available to address violations of the Fourth Amendment involving unjustified, warrantless searches and seizures by line officers performing routine criminal law enforcement duties." *Id.* Although the *Hicks* plaintiff was never arrested and taken into custody, his detention was cognizable because it was "subject to the same objective inquiry of reasonableness mandated by Fourth Amendment jurisprudence" as in *Bivens*. *Id.* at 168.

In this case, the factual allegations are even more analogous to *Bivens* than the circumstances presented in *Hicks*: (1) like the *Bivens* plaintiff, Plaintiff was a civilian, not a law enforcement officer, as in *Hicks*; (2) Plaintiff was subjected to custodial arrest and jailing, as in *Bivens*, a fact not present in *Hicks*; and (3) Plaintiff experienced an allegedly excessive use of force, a claim the *Bivens* plaintiff also brought, but that the *Hicks* plaintiff did not pursue.

Defendants argue that because *Bivens* concerned federal narcotics officers, "the Park Police are a 'new category of defendants,'" which alone is sufficient to present a new context. Defs.' Mem. at 8 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) & citing *Hernandez*, 140 S. Ct. at 739–40; *Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023)). But the cases upon which Defendants rely do not support that argument.

In *Malesko*, the Court declined to extend *Bivens* to a lawsuit against a private corporation that operated a halfway house under a contract with the Federal Bureau of Prisons. 534 U.S. at 63, 72. The Court reasoned that authorizing suits against private prison entities would not further "[t]he purpose of *Bivens*," which "is to deter individual federal officers from committing constitutional violations." *Id.* at 70. Thus, *Malesko*'s holding was not based on the mere difference in type of defendant, but the fact that *Bivens*' core purpose would not be served by extending the remedy to private prison entities. No such circumstance is present here.

In *Hernandez*, the Court found that a Fourth Amendment claim against a Border Patrol agent presented a new context, due to the fact that it involved a "cross-border shooting," which was "by definition an international incident" that implicated significant national security concerns. 140 S. Ct. at 744.  The Court contrasted the cross-border incident with the "arrest and search carried out in New York City" at issue in *Bivens*, to demonstrate the new nature of the case. *Id.*  Plaintiff's allegations implicate none of the international, political, and national security concerns that were apparent in *Hernandez*.

Finally, Defendants cite to the D.C. Circuit's decision in *Buchanan v. Barr*, which found that a *Bivens* remedy was unavailable to protestors who were cleared from a public park by U.S. Park Police officers because the case presented a new context and special factors existed. 71 F.4th at 1008–09.  But there, the parties agreed that the case presented a new *Bivens* context, such that the issue was not fully before the court. *Id.* at 1008.  Even so, the Circuit reasoned that "the clearing of protestors from a public park by federal law enforcement officers is notably different from an unlawful search and arrest by federal narcotics officers[.]" *Id.*  Although the alleged challenged conduct here, like *Buchanan*, occurred at the hands of U.S. Park Police and in a public space, Plaintiff is not a protestor who was "cleared" for engaging in speech activities, but rather an individual who was subject to "an unlawful search and arrest" by federal officers. *Id.*

\*   \*   \*

Plaintiff has plausibly alleged that he was "injured by federal officers who violated the prohibition against unreasonable search and seizures." *Abbasi*, 582 U.S. at 131.  Because there is no new context, the court need not assess the existence of any special factors as to Plaintiff's Fourth Amendment *Bivens* claims, ending the inquiry.  Those claims are thus cognizable, and Defendants' motion to dismiss is denied as to Counts One and Two.

### 2.     *Fifth Amendment (Counts Three and Four)*

The court reaches a different conclusion as to Plaintiff's Fifth Amendment *Bivens* claims, which allege that the Individual Defendants deprived him of his (a) substantive due process rights and (b) equal protection rights.  *See* Am. Compl. ¶¶ 33–40.

#### a.     *Due Process (Count Four)*

Defendants contend that Plaintiff's substantive due process claim is "facially invalid" because it arises out of the same set of facts as the Fourth Amendment claims, and substantive due process is not an appropriate framework for analyzing misconduct related to an arrest.  Defs.' Mem. at 10–11.  Plaintiff agrees that his due process claim has "direct interplay in Defendants' violation of Plaintiff's 4th Amendment rights" and that it is connected "directly" to those claims, but asserts that this substantive overlap poses no bar to his Fifth Amendment claims.  Pl.'s Mem. of L. in Opp'n to Defs.' Mot., ECF No. 35 [hereinafter Pl.'s Opp'n], at 17, 14.  The Supreme Court, however, has made clear:

> [*A*]*ll* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395 (1989).  So, there is no independent *Bivens* claim under the Fifth Amendment if the claim can be brought as a violation of the Fourth Amendment.

Because Plaintiff concedes that the substantive due process claim is coextensive with the Fourth Amendment claim, and because the Fourth Amendment provides the exclusive analytical framework for its adjudication, the court dismisses Count Four.  *See Wright v. United States*, No.

9

95-cv-0274 (LFO), 1996 WL 34401516, at *3 (D.D.C. Feb. 8, 1996) (dismissing Fifth Amendment *Bivens* claim arising from an allegedly unlawful arrest by the U.S. Park Police) (citing *Graham*, 490 U.S. at 395).

b. *Equal Protection (Count Three)*

Defendants move to dismiss the equal protection claim on the grounds that although the Court has recognized a gender discrimination claim, *see Davis*, 442 U.S. at 228, it "has never recognized a Fifth Amendment Equal Protection claim stemming from a stop, arrest, and detention based on race, or any type of racial discrimination claim," Defs.' Mem. at 12. Plaintiff appears to agree that a race discrimination claim raises a "question of first impression," presenting a new context, but he contends that no special factors counsel against extension of the *Bivens* remedy. Pl.'s Opp'n at 14; *accord Mays v. Smith*, 70 F.4th 198, 203 (4th Cir. 2023), *cert. denied*, No. 23-723, 2024 WL 759815 (U.S. Feb. 26, 2024) (holding that the prisoner-plaintiff's Fifth Amendment race discrimination claim presented a new context because "[t]he Supreme Court has never authorized a Bivens claim for . . . race-based discrimination" and noted that "prison officials, as opposed to a former Congressman in *Davis*," exist in "a different legal and factual context").

The court thus proceeds to the second prong of the analysis, that is, whether any special factors warrant hesitation in extending the *Bivens* remedy here. The Supreme Court has held that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure. If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493 (cleaned up). When determining whether such a structure exists, the court must not inquire whether "existing remedies . . . provide complete relief," but rather "must ask only whether it, rather than the political branches, is better

10

equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy." *Id.* (internal quotation marks omitted). "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* (internal quotation marks omitted).

Defendants argue that the U.S. Park Police's internal grievance and disciplinary procedures serve as an alternative remedial structure precluding Plaintiff's claims, analogizing to *Egbert*. Defs.' Mem. at 16. There, the Court held that a *Bivens* remedy was unavailable because "Congress ha[d] provided alternative remedies for aggrieved parties in [the plaintiff's] position" and because regulations had created administrative remedies. *Id.* at 497; *see also Malesko*, 534 U.S. at 74 (finding that prison administrative remedy counseled against extending *Bivens*, as that "program provide[d] yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the B[ureau of Prisons] and prevented from recurring"). This was true in *Egbert* notwithstanding the limitations of that process, including unavailability of "judicial review of an adverse determination." *Egbert*, 596 U.S. at 497.

In this case, Defendants contend that the Department of the Interior's rulemaking and internal investigatory authority supplies an alternative remedial scheme. Defendants point the court to the National Park Service website, which allows individuals to file complaints with the U.S. Park Police's Internal Affairs Unit. Defs.' Mem. at 16. Plaintiff characterizes this complaint process as "tenuous," arguing that "the U.S. Park Police Department's internal grievance process is not analogous to the internal grievance processes in *Malesko* and [*Egbert*]." Pl.'s Opp'n at 17. In response, Defendants argue that "[n]o case law dictates the structure of the grievance process that must be available to serve as an alternative remedy." Defs.' Reply in Further Supp. of Defs.' Mot., ECF No. 37 [hereinafter Defs.' Reply], at 6.

Defendants are correct. *Egbert* does not require statutory or regulatory codification of an administrative process for the alternative remedial scheme to foreclose relief. It suffices that a political branch "has created a remedial process . . . sufficient to secure an adequate level of deterrence[.]" *Egbert*, 596 U.S. at 498. As the Tenth Circuit recently held in an analogous setting, "the internal [law enforcement agency] grievance procedure and the Department of Justice's Office of the Inspector General (OIG) investigation procedure are adequate alternative remedies." *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024); *see also Xi v. Haugen*, 68 F.4th 824, 836–37 (3d Cir. 2023) (rejecting Fifth Amendment equal protection claim in part because alternative remedies are available to a wrongfully convicted and imprisoned defendant under 28 U.S.C. § 1495 and the Hyde Amendment, 18 U.S.C. § 3006A, even though the plaintiff in that case had not been convicted; the court also noted the national-security context of the case, another special factor). Having found the presence of a special factor, the existence of an alternative remedial scheme, the court dismisses Plaintiff's Fifth Amendment *Bivens* claim under the Equal Protection Clause (Count Three).[1]

**B.   FTCA Claim**

Defendants also seek dismissal of Plaintiff's negligent supervision and retention claim (Count Nine) against Defendant U.S. Park Police, contending that Plaintiff has failed to plead that the agency had the required actual or constructive knowledge of its employees' misconduct. Defs.' Mem. at 23–25. In considering this element, "[c]ourts in this District look to whether . . . supervisors were put on 'constructive notice of dangerous or incompetent behavior by the officers

---

[1] The court need not reach Defendants' argument that the FTCA serves as an alternative remedial scheme to *Bivens*. Defs.' Mem. at 17–18. It notes, however, that this issue remains an open question in the D.C. Circuit after the Supreme Court's decision in *Carlson v. Green*, 466 U.S. at 19–23. *Compare K.O. by & through E.O. v. Sessions*, No. 20-5255, 2022 WL 3023645, at *4 (D.C. Cir. July 29, 2022) (majority finding that special factor existed based on alternative remedial scheme contained in the Administrative Procedure Act, but declining to decide the presence of the factor based on the FTCA), *with id.* at *7 (Sentelle, J., concurring) ("[A] coinciding damages remedy authorized by the FTCA is *a fortiori* a special factor precluding a *Bivens* remedy[.]").

in question prior to' the incident in question." *Leach v. Dist. of Columbia*, No. 19-cv-947 (APM), 2022 WL 1316436, at *13 (D.D.C. May 3, 2022) (quoting *Spiller v. Dist. of Columbia*, 302 F. Supp. 3d 240, 255 (D.D.C. 2018)). "This may take the form of allegations that the defendant officers had engaged in similar incidents previously, or that supervisors knew of other problematic aspects of their behavior." *Id*.

The Second Amended Complaint alleges only that "[t]he U.S. Park Police are or should be aware of a pattern of its officers falsely arresting D.C. citizens and using excessive force against them." Am. Compl. ¶ 65. Defendants argue this allegation is speculative and conclusory, Defs.' Reply at 9–11, and the court agrees, *see Iqbal*, 556 U.S. at 678. Beyond this conclusory assertion, "Plaintiff has alleged no facts to render it plausible that [] Defendant had actual or constructive knowledge that one or more of its employees or agents would behave in a dangerous or incompetent manner." *Logan v. Jones Lang LaSalle Americas, Inc.*, No. 18-cv-02278 (APM), 2019 WL 1960208, at *3 (D.D.C. May 2, 2019); *see also Odom v. Dist. of Columbia*, 248 F. Supp. 3d 260, 271 (D.D.C. 2017) (same); *cf. Lin v. Dist. of Columbia*, 47 F.4th 828, 846 (D.C. Cir. 2022) (concluding that the plaintiff, at summary judgment, had not proven her negligent supervision claim because "she ha[d] not come forward with evidence that would allow a reasonable jury to find that the District of Columbia was aware of an alleged constitutional shortfall in its officers' behavior because, on this record, her case appears to be an isolated incident").

The court therefore grants Defendants' motion to dismiss Count Nine.

## IV.

For these reasons, the court grants in part and denies in part Defendants' Partial Motion to Dismiss, ECF No. 33.  The motion is denied as to Counts One and Two and granted as to Counts Three, Four, and Nine.

Dated:  April 12, 2024

Amit P. Mehta
United States District Court Judge