**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JONATHAN B. MCKINNEY,**<br>**Plaintiff,**<br>**v.**<br>**JOSEPH HAYES, *et al.*,**<br>**Defendants.** | ) | **Case No. 22-cv-02943 (APM)** |

**MEMORANDUM OPINION AND ORDER**

**I.**

This case arises from an altercation between Plaintiff Jonathan B. McKinney and officers of the U.S. Park Police at Battery Kemble Park in Washington, D.C., on July 8, 2022. On that day, Plaintiff was inside the park walking a dog and playing the mobile game Pokémon GO, when a man approached him. Defs.' Reply in Supp. of Its Mot. for Summ. J., ECF No. 67 [hereinafter Defs.' Reply], Defs.' Resp. to Pl.'s Stmt. of Material Facts in Dispute, ECF No. 67-1 [hereinafter Defs.' Resp. to Facts], at ¶ 1.[1] The man, it turns out, was Defendant Lieutenant Joseph Hayes of the U.S. Park Police, who was working in an undercover capacity and therefore wearing nothing that would visibly identify him as a law enforcement officer. *Id.* ¶ 3. Hayes apparently heard Plaintiff utter the word "pig" before he entered Battery Kemble Park but otherwise observed no unlawful behavior by him. *Id.* ¶ 4. As the two men passed each other inside the park, Hayes asked, "How are you doing?," to which Plaintiff responded, "Do not talk to me." *Id.* ¶ 5.

[1] The court cites to Defendants' response to "Plaintiff's Statement of Material Facts in Dispute," *see* Defs.' Resp. to Facts, only when Defendants do not challenge Plaintiff's fact assertion. Otherwise, where the parties' views differ, the court cites to their respective fact statements or the evidentiary record.

From this point, the stories diverge. According to Plaintiff, he continued to play his game and, as he began to walk out of the park, Hayes appeared again, asked to speak with him, and attempted to block his path of egress. Defs.' Mot. for Summ. J. and Mem. in Supp. Thereof, ECF No. 61 [hereinafter Defs.' Mot.], Ex. 3, ECF No. 61-2, at 38–39.[2] He walked past Hayes without touching him. *Id.* at 39. Upon leaving the park, Plaintiff saw a marked police car slow down. *Id.* at 40–41, 44. An officer jumped out of the car and grabbed him without warning, knocking the phone out of his hand. *Id.* at 41, 44–45. As Plaintiff went to retrieve his phone from the road, a second officer tried to grab him. *Id.* Plaintiff then ran back into the park, realizing only as he fled that the two men who tried to stop him were police officers. *Id.* at 45, 47. Plaintiff came upon a fence, put his hands up, and felt two taser darts go into his back. *Id.* at 48–50. He then saw Hayes fire another dart into his right shin. *Id.* The officers detained Plaintiff and arrested him for assault on a police officer. Pl.'s Opp'n to Defs.' Mot., ECF No. 64 [hereinafter Pl.'s Opp'n], Ex. 3, ECF No. 64-1, at 70. The U.S. Attorney's Office declined to charge Plaintiff, and he was released the following morning. Defs.' Mot., Defs.' Local Rule 7(h) Stmt. of Material Facts as to Which There is No Genuine Dispute, ECF No. 61-1 [hereinafter Defs.' Stmt.], at ¶ 20.

Defendants recount a starkly different tale. According to Hayes, after responding "Don't talk to me," Plaintiff slapped sunglasses off the top of his head. *Id.* ¶ 7. Hayes followed Plaintiff out of the park. *Id.* ¶ 8. He then called Defendant Officer Alec Trapani, advised Trapani that Plaintiff had slapped him, and instructed Trapani and his partner, Officer Andrew James, to make a stop. *Id.* ¶¶ 8–9. Trapani and James attempted to apprehend Plaintiff, *id.* ¶ 10, but he resisted, tried to grab Trapani's taser, and eventually broke free and ran into the park, *id.* ¶ 11; Defs.' Mot., Ex. 2, ECF No. 61-2 [hereinafter Trapani Dep.], at 14. After a failed attempt at

[2] Because both parties included all their exhibits in a single .pdf file, page references to their exhibits are to the CM/ECF page number.

climbing a fence, Plaintiff took up a boxing stance and tried to punch James in the head. Trapani Dep. at 14–15, 17–19. Trapani then fired a taser at Plaintiff. *Id.* at 15. Hayes did too. Defs.' Stmt. ¶ 13. After Plaintiff was secured in handcuffs, Defendant Officer Sheila O'Sullivan arrived and helped lift him off the ground. *Id.* ¶ 15. He was transported by ambulance to the hospital, accompanied by Trapani and O'Sullivan. *Id.* ¶¶ 18–19. According to O'Sullivan, as memorialized in her notes, Plaintiff said at the hospital: "[T]his is all over some sunglasses?" and "[C]an I just apologize now." Defs.' Mot., Ex. 8, ECF No. 61-2 [hereinafter O'Sullivan Notes], at 108.

**II.**

Plaintiff brought this action against the United States and four individual U.S. Park Police Officers ("Individual Defendants")—Hayes, Trapani, O'Sullivan, and Michael Wilson.[3] Compl., ECF No. 1 [hereinafter Compl.]; Second Am. Compl., ECF No. 26 [hereinafter Am. Compl.].[4] He brought *Bivens* claims against the Individual Defendants for violations of his Fourth and Fifth Amendment rights (Counts One through Four). Am. Compl. at 6–9. Against the United States, he asserted multiple torts under the Federal Tort Claims Act (FTCA): Assault and Battery (Count Five), False Arrest/False Imprisonment (Count Six), Negligence/Gross Negligence (Count Seven), Negligent Infliction of Emotional Distress (Count Eight), and Negligent Supervision and Retention (Count Nine). *Id.* at 9–12.

On April 12, 2024, the court granted in part and denied in part Defendants' Partial Motion to Dismiss. *See* Mem. Op. and Order, ECF No. 38 [hereinafter Order], at 2. The court dismissed Plaintiff's Fifth Amendment *Bivens* claims and his FTCA negligent supervision and retention

[3] Plaintiff acknowledges that he mistook Wilson, who was not involved in the incident, for James. Defs.' Mot., Ex. 9, ECF No. 61-2, at 112. Plaintiff never substituted James for Wilson. Summary judgment is therefore granted as to the claims against Wilson.

[4] Plaintiff originally brought the case only against four John Doe Officers. *See* Compl. After learning of their identities, he amended his complaint to name Individual Defendants. *See* Am. Compl. He later added the United States as a defendant. *See id.*

claim but permitted his Fourth Amendment *Bivens* claims to proceed to discovery, along with the tort claims as to which the United States did not move. *Id.*

Defendants now move for summary judgment on all remaining claims. *See* Defs.' Mot. at 4.[5] For the reasons explained below, the motion is granted as to the Fourth Amendment *Bivens* claims and the negligence claims under the FTCA. It is denied as to the assault and battery and false arrest/false imprisonment claims under the FTCA.

## III.

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable factfinder could find for the non-moving party, and a fact is "material" if it can affect the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).

The moving party bears the burden of establishing there is no genuine issue of material fact by pointing to evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must avoid "making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and "view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party," *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted).

[5] Plaintiff complains that Defendants failed to file a Local Civil Rule 7(h) statement of undisputed material facts. *See* Pl.'s Opp'n at 1. Defendants did, however, file such statement, though they mislabeled it as a Proposed Order on the docket. *See* Defs.' Stmt.

**IV.**

**A.**

The court begins with Plaintiff's *Bivens* claims alleging violations of the Fourth Amendment for excessive force and false arrest. At the motion-to-dismiss stage, the court allowed these claims to proceed, holding that they did not present a new *Bivens* context. *See* Order at 5–8. Individual Defendants now seek entry of judgment and again argue that this case presents a new context in which a *Bivens* remedy is not available. Defs.' Mot. at 8–17. This time the court agrees. With the benefit of discovery and the D.C. Circuit's recent decision in *Jones v. U.S. Secret Service,* 143 F.4th 489 (D.C. Cir. 2025), the court finds that Plaintiff's claims present a new *Bivens* context and special factors counsel against allowing them to proceed.[6]

Over fifty years ago, the Supreme Court recognized an implied right of action against federal officers for violations of the Fourth Amendment. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). In *Bivens*, the Court "held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable searches and seizures." *Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017) (citing *Bivens*, 403 U.S. at 397). In the decade that followed, the Court authorized an implied cause of action for two other constitutional claims: a Fifth Amendment gender discrimination claim in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment prison healthcare claim in *Carlson v. Green*, 446 U.S. 14 (1980). These cases turned out to be the high-water mark. In the years since, the Court has repeatedly declined to imply additional *Bivens*-style causes of action. *See Goldey v. Fields*, 606 U.S. 942, 942 (2025)

[6] Because the court declines to recognize a cause of action under *Bivens*, it need not reach the parties' arguments over whether Individual Defendants are protected by qualified immunity. *See* Defs.' Mot. at 21–27; *see also* Pl.'s Opp'n at 9–20.

(per curiam) ("After 1980, we have declined more than 10 times to extend *Bivens* to cover other constitutional violations."); *see also Egbert v. Boule*, 596 U.S. 482, 486 (2022) (collecting cases). The Court has stopped short of closing the door to *Bivens* relief entirely. Nevertheless, it has said that recognizing a new *Bivens* cause of action is a "disfavored judicial activity," and it has "made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert*, 596 U.S. at 486, 491.

To determine whether a *Bivens* claim can proceed, courts perform a two-step analysis. *See Ziglar*, 582 U.S. at 147–149. The first question is "whether the claim arises in a new *Bivens* context, *i.e.*, whether the case is different in a meaningful way from previous *Bivens* cases decided by [the] Court." *Id.* at 147 (internal quotation marks omitted). "What constitutes a 'new context' is exceedingly broad." *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). "Cases can meaningfully differ even if they involve the same 'right' and 'mechanism of injury.'" *Jones*, 143 F.4th at 494 (quoting *Ziglar*, 582 U.S. at 137). "Meaningful differences may include the rank of the officers involved, the constitutional right at issue, and the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* (internal quotation marks omitted).

"If the context is not new, the claim can go forward." *Buchanan*, 71 F. 4th at 1007. If the case arises in a new context, at the second step the court must ask whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). Though initially framed as two distinct steps, the Court later explained that the inquiry will often boil down to "a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 492.

At the first step of the inquiry, Plaintiff urges the court to see the facts of *Bivens* itself mirrored here. He alleges that the Park Police officers harassed, unlawfully arrested, and humiliated him. Officers did the same to Bivens. *See Bivens*, 403 U.S. at 389 (noting that "agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered [the plaintiff's] apartment and arrested him for alleged narcotics violations," then "manacled [him] in front of his wife and children, and threatened to arrest the entire family"). But such "superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495. There are at least two "meaningful differences" between this case and *Bivens*: (1) the location of the alleged misconduct—federal park land rather than a private home, and (2) the nature of the police work that led to the claim—a covert Archaeological Resource Protection Act investigation versus a warrantless entry based on a suspected narcotics violation. *Jones*, 148 F.4th at 494. A happenstance encounter with an undercover Park Police officer on federal park land that leads to an arrest for alleged assault on that officer is "notably different from an unlawful search and arrest by federal narcotics officers." *Buchanan*, 71 F.4th at 1008 (explaining that "the clearing of protestors from a public park by federal law enforcement officers is notably different from an unlawful search and arrest by federal narcotics officers").

Plaintiff swats away these differences as "cosmetic." Pl.'s Opp'n at 8. But the D.C. Circuit in *Jones* was clear that both location and type of law enforcement activity are distinctions that matter. *See Jones*, 148 F.4th at 494 (finding a new *Bivens* context because Secret Service officers were "protecting a federal building from a perceived threat" when they detained and searched the plaintiff, unlike in *Bivens* where officers arrested the plaintiff in his home). As in *Jones*, where the D.C. Circuit found that officers were engaged in "materially differ[ent]" law enforcement activity than in *Bivens*, here too, law enforcement's encounter with Plaintiff and the events that

led to his arrest—including flight and pursuit by one defendant, Trapani, who did not observe the interaction between Hayes and Plaintiff[7]—make this materially different from *Bivens*.

The court acknowledges that it reached a different conclusion at the motion-to-dismiss stage. It did so, resting largely on the Fourth Circuit's decision in *Hicks v. Ferreyra*, 64 F.4th 156 (4th Cir. 2023). Order at 5–7. The court, however, is now convinced that the D.C. Circuit would take a different view of this case, especially in light of its decision in *Jones*. Binding precedent compels a different outcome on the "new context" question.

Having concluded this is a new context, the next question is whether special factors counsel against recognizing a cause of action—they do. The most prominent is that "Congress has provided alternative remedies for aggrieved parties in [Plaintiff's] position," namely, the FTCA. *Egbert*, 596 U.S. at 497. The court previously declined to so hold, Order at 12 n.1, but now recognizes that courts in this District have found that the availability of relief under the FTCA closes the door to a *Bivens* remedy. *See, e.g., Fischer v. Dist. of Columbia*, No. 24-cv-0044 (CRC), 2025 WL 894445, at *16 (D.D.C. Mar. 24, 2025); *see also Guertin v. Leipfert*, No. 24-cv-0001 (RBW), 2025 WL 870362, at *3 (D.D.C. Mar. 20, 2025); *cf. K.O. by & through E.O. v. Sessions*, No. 20-5255, 2022 WL 3023645, at *4 (D.C. Cir. July 29, 2022) (majority finding that special factor existed based on alternative remedial scheme contained in the Administrative Procedure Act but declining to decide the presence of the factor based on the FTCA). This court joins them, at least on the facts of this case. *Cf. Carlson*, 446 U.S. at 20 (1980) (observing that "Congress views FTCA and *Bivens* as parallel, complementary causes of action").

[7] Plaintiff mistakenly lumps all Defendants' conduct together in defending his *Bivens* claims. But the factual circumstances are different for each Defendant. Plaintiff does not dispute that Trapani approached Plaintiff only after receiving direction from Hayes to stop him. *See* Pl.'s Opp'n at 4. And O'Sullivan was not involved at all in the conduct giving rise to the alleged Fourth Amendment violations. *Id.* at 3–7. Therefore, as to Trapani and O'Sullivan, the factual dissimilarities with *Bivens* are even more significant than as to Hayes.

The FTCA is not the only available alternative remedy. As the court previously held when dismissing Plaintiff's Fifth Amendment *Bivens* claims, the U.S. Park Police's internal grievance and disciplinary procedures serve as an alternative remedial scheme sufficient to foreclose the availability of a *Bivens* remedy. *See* Order at 11–12; *see also Egbert*, 596 U.S. at 497–98 (holding *Bivens* relief was unavailable against Customs and Border Patrol agent because the agency has its own investigation and grievance regime); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (holding *Bivens* relief unavailable in part because "[i]nmates in respondent's position also have full access to remedial mechanisms established by the [Bureau of Prisons (BOP)], including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program"). The D.C. Circuit in *Jones* lent further support to this conclusion when it found that the ability to submit employee misconduct complaints against Secret Service agents was sufficient to "independently foreclose a *Bivens* action." 143 F.4th at 494 (quoting *Egbert*, 596 U.S. at 497). And other courts have found the availability of the Park Police complaint procedures to have the same preclusive effect. *See Kaur v. Kellenberger*, No. 20-cv-1432-CKK-MJS, 2025 WL 1676005, at *8 (D.D.C. June 13, 2025), *R. & R. adopted*, No. 20-cv-1432 (CKK), 2026 WL 575488 (D.D.C. Mar. 2, 2026); *Gray v. Gomez*, 728 F. Supp. 3d 264, 273 (E.D.N.Y. 2024) (reasoning that "the existence of the Park Police's complaint procedures *alone* foreclose[d]" *Bivens* relief); *Madera v. United States*, No. 24-cv-2903 (PKC), 2025 WL 1019139, at *7 (S.D.N.Y. Apr. 4, 2025) (same). "If an alternate remedy was good enough [in those cases], it is good enough here." *Jones*, 143 F.4th at 495.

In sum, Plaintiff's Fourth Amendment claims present a new context and special factors counsel against extending a *Bivens* remedy. Accordingly, the court enters judgment in favor of Individual Defendants as to Plaintiff's Fourth Amendment *Bivens* claims.

**B.**

That leaves Plaintiff's tort claims under the FTCA. The court first addresses Plaintiff's claims for negligence and negligent infliction of emotional distress. When a plaintiff alleges both intentional tort and negligence claims, "'negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from' the intentional tort 'itself and [that is] violative of a distinct standard of care.'" *Lewis v. Dist. of Columbia*, 768 F. Supp. 3d 76, 120 (D.D.C. 2025) (alteration in original).

Here, Plaintiff does not have a theory of negligence that is distinct from his intentional tort claims. He argues that Hayes' failure to identify himself as law enforcement and use of a personal cellphone in violation of Park Police communication protocols are distinct bases for his negligence claims. *See* Pl.'s Opp'n at 23–24. However, these allegations are "intertwined with and dependent on" Plaintiff's intentional tort claims and do not present a separate theory of negligence. *See Stewart-Veal v. Dist. of Columbia*, 896 A.2d 232, 235 (D.C. 2006) (holding that the plaintiff's negligence claim was properly dismissed because it was "not separate and distinct from [her] false arrest claim; rather, it [was] intertwined with and dependent on that claim").[8]

The intentional tort claims require a different outcome. There is a fundamental dispute of fact between Plaintiff's and Individual Defendants' descriptions of what occurred. If a jury credits Plaintiff's version of events—that he did not touch Hayes or his sunglasses before Hayes became aggressive and falsely called in his colleagues—they may find the United States liable. *See* Pl.'s Opp'n at 4.

[8] Plaintiff's negligence claims also cannot survive because he has not designated an expert to establish a standard of care. *See Varner v. Dist. of Columbia*, 891 A.2d 260, 267 (D.C. 2006) (stating that "expert testimony is required to establish the standard of care in negligence cases . . . which involve issues of safety, security and crime prevention"). Plaintiff nowhere responds to this argument. *See generally* Pl.'s Opp'n.

The United States acknowledges this conflict between Hayes' and Plaintiff's testimony but asserts that Plaintiff's version is incredible based on O'Sullivan's recording of comments purportedly made by Plaintiff[9] at the hospital after his arrest, "[T]his is all over some sunglasses?" and "[C]an I just apologize now." O'Sullivan Note at 108; Defs.' Resp. to Facts ¶ 6. But this is evidence for a trier of fact to consider. At this point the court must avoid "making credibility determinations or weighing the evidence." *Czekalski*, 475 F.3d at 363.

The United States further claims that it is protected from liability on the basis of qualified privilege. Defs.' Mot. at 28–29. However, qualified privilege offers no protection on this record where there is a genuine dispute of material fact as to whether Individual Defendants acted reasonably in their interactions with Plaintiff. *See Etheredge v. Dist. of Columbia*, 635 A.2d 908, 916 (D.C. 1993) ("A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." (internal quotation marks omitted)). Because the parties dispute what transpired on July 8, 2022, Defendants' motion is denied as to Plaintiff's intentional tort claims under the FTCA.

## V.

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 61, is granted in part and denied in part. The court (1) grants Defendants' motion as to the Fourth Amendment *Bivens* claims (Counts One and Two) and the negligence claims under the FTCA

[9] Defendants did not include these alleged comments in their Statement of Material Facts. *See* Defs.' Stmt. As a result, Plaintiff has neither admitted nor denied that he made them.

(Counts Seven and Eight), and (2) denies the motion as to Plaintiff's intentional tort claims under the FTCA (Counts Five and Six).

The parties shall appear for a remote status hearing on October 13, 2026.

Dated: September 28, 2026

Amit P. Mehta
United States District Judge